Harold R. CATE et al.

v.

**BLUE CROSS AND BLUE SHIELD
OF ALABAMA.**

Debbie S. HELSLEY

v.

**BLUE CROSS AND BLUE SHIELD
OF ALABAMA.**

**Civ. Nos. 3–77–152 and 3–77–153.**

United States District Court,
E. D. Tennessee, N. D.

Aug. 4, 1977.

William D. Vines, Knoxville, Tenn., for plaintiffs.

Jerome Templeton, Knoxville, Tenn., for defendant.

## MEMORANDUM AND ORDER

JOSEPH H. YOUNG, District Judge, sitting by designation.

The plaintiffs are three individuals claiming to be insured parties and beneficiaries under a contract of insurance between defendant, Blue Cross and Blue Shield of Alabama, and South Central Bell Telephone Company.[1] Suit was originally brought in the Chancery Court for Knox County, Tennessee, Division 1, and removed to this Court pursuant to 28 U.S.C. § 1441. The defendant has filed a motion to dismiss. Plaintiffs oppose the motion and move to remand the cases to state court. The Court has considered the motions, and concludes the complaints fail to state claims over which the Court has original jurisdiction, and that removal was improper. The cases will, therefore, be remanded to the Chancery Court for Knox County.

The complaints state causes of action for breach of contract. Plaintiffs contend that they are beneficiaries of defendant's agreement with South Central Bell to provide health benefits to its employees and former employees. They claim to have incurred medical expenses which defendant has refused to reimburse, and that this denies them guaranteed benefits. They point to an alleged ambiguity in the terms of the insurance coverage, and argue that under the law of Tennessee, the ambiguity must be resolved against the defendant.

In removing the case, the defendant alleged the Court's jurisdiction under the Labor-Management Relations Act of 1947, 29 U.S.C. § 185(a); diversity jurisdiction, 28 U.S.C. § 1332; and the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132. The Court has considered these allegations of jurisdiction, but finds that none of them has merit.

1. Communications Workers of America; originally a plaintiff in Civil No. 3–177–152, has dismissed the action on its own behalf and without prejudice.

The Labor-Management Relations Act, 29 U.S.C. § 185(a), gives the federal court jurisdiction over suits brought for violation of contracts between an employer and a labor organization; that is, for breach of a collective bargaining agreement. Defendant argues that the provisions of the agreement between South Central Bell and its employees will be relevant to this suit, and that the Court, therefore, has jurisdiction over the case. Obviously, plaintiffs are not employees of defendant, and no collective bargaining agreement exists between them. Even if the collective bargaining agreement plaintiffs enjoy has some unexplained relevance to their claim against defendant, that by itself cannot confer jurisdiction on the Court under § 185(a).

Similarly, there is no jurisdiction under, 28 U.S.C. § 1332 because the amount in controversy has not been shown to exceed $10,000. Plaintiffs are suing in their individual capacities,[2] and the claim of each is less than $1,000. Defendant points to cases in which federal courts have looked to the impact of the requested relief on the defendant to conclude the amount in controversy exceeds $10,000. *Committee for G. I. Rights v. Callaway,* 171 U.S.App.D.C. 73, 518 F.2d 466, 472 (1975); *Miller v. Standard Federal Savings & Loan Association,* 347 F.Supp. 185 (E.D.Mich.1972). These cases involved requests for injunctive relief, wherein the value of the requested relief to the plaintiff was relatively small but to the defendant, its cost could be quite substantial. Under such circumstances, it may well be appropriate to determine the amount in controversy from the defendant's perspective rather than from the plaintiff's.

But this case is readily distinguishable from the cases cited. If plaintiffs were to succeed on the merits, they would do so because a court found that they were entitled to benefits under the contract construed to eliminate the alleged ambiguity or to comply with the public policy of Tennes-

see. If it happened that they submitted further claims for reimbursement sometime in the future, defendant would be collaterally estopped from raising the issue of coverage *vel non*. But the collateral estoppel effect, even if measurable, cannot be relied upon to augment the value of the right in dispute in this suit. *Beaman v. Pacific Mutual Life Insurance Co.,* 369 F.2d 653 (4th Cir. 1966); *Elliott v. Empire Natural Gas Co.,* 4 F.2d 493 (8th Cir. 1925); *Berlin v. Travelers Ins. Co. of Hartford, Conn.,* 18 F.Supp. 126 (D.Md.1937). As a result, the Court must conclude that defendant's allegation of the required amount in controversy is without merit, and diversity jurisdiction is absent.

Finally, defendant relies on the provisions of the Employee Retirement Income Security Act (ERISA) and the grant of federal court jurisdiction contained therein. Title 29, U.S.C., § 1132 permits a civil action to be brought in federal court by a participant or beneficiary of an employee welfare plan to recover benefits due him under the terms of the plan, to enforce his rights under its terms, or to clarify his right to future benefits. § 1132(a)(1)(B). Subsection (e)(1) makes this grant of jurisdiction concurrent with that of state courts of competent jurisdiction. Defendant argues that the claims presented by plaintiffs fall within the scope of this jurisdictional grant and that the action could, therefore, have originally been brought in federal court.[3]

There is no doubt that an employee group health insurance plan of the type described in the appendix to the complaint falls within the definition of an "employee benefit plan". § 1002. The crux of defendant's argument is that because the complaint alleges defendant is contractually bound to offer reimbursement of medical expenses under that plan, it is subject to suit under § 1132.

In enacting ERISA, Congress was concerned about the dramatic growth of em-

---

2. The Communications Workers of America, before withdrawing from the action, sued for the benefit of its members.

3. In support of its motion to dismiss, defendant argues that the complaint is also cognizable

under subsection (a)(3), and that as to such actions, the federal court has exclusive jurisdiction. If federal jurisdiction is exclusive, the action is not one which was properly instituted in state court, and removal is, therefore, also

ployee benefit plans in recent years and the importance they have assumed to the security of millions of workers. It was found desirable to assure disclosure and safeguards with respect to the establishment, operation, and administration of such plans. Congress noted in particular that existing law offered no assurance that these plans were financially sound or that they were administered in a way which actually gave workers the promised benefits. Having found that employee benefit plans required national attention, Congress expressed its legislative intention as follows:

> It is hereby declared to be the policy of this Act to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts. § 1001.

 It is clear from this declaration of policy, and from the structure of the Act,[4] that the focus of Congress was on the "conduct, responsibility and obligation" of those who were responsible for administering employee benefit plans. Having established a new body of federal rights and obligations, Congress added to the jurisdiction of the federal courts in order to further the legislative purpose. For this reason, it preempted state laws insofar as they related to employee benefit plans. § 1144.

 But nowhere in the Act does Congress show concern that insurance companies, subject to state laws regulating such businesses, needed additional regulation by the federal government to assure their financial stability.[5] Section 1101(b)(2) provides that in the case of a plan to which a guaranteed benefit policy is issued by an insurer, the assets of the plan include the policy. But the policy is not the plan itself. Consequently, the insurer is not in the position of an administrator of the plan with fiduciary responsibilities. In this case, the defendant's obligations to plaintiffs are defined by the contract it executed with South Central Bell, and it owes no duties created by ERISA. As a result, establishing federal jurisdiction over a case such as this could not promote the national policy towards employee benefit plans. If this action is to proceed in federal court, Congress' grant of jurisdiction, unrestricted by citizenship or amount in controversy requirements, must be construed in a way to make every dissatisfied claimant under an employer's group health insurance plan a potential litigant in federal court. Were such a construction consistent with the legislative purpose of Congress the Court would have no hesitancy in recognizing it. But the states have not failed in their traditional role of enforcing rights created under an insurance contract. The Court is convinced that the literal construction of § 1132 defendant proposes is not consistent with Congress' intent and the role of federal courts as courts of limited jurisdiction, where the defendant is an insurer whose only relation to an employee benefit plan is its contract to guarantee insurance benefits

improper. The Court need not consider the merits of this argument because, for reasons stated, there is no federal cause of action under any provisions of ERISA which permits plaintiffs' actions against this defendant.

4. ERISA is a lengthy, complex statute setting out regulations for the future operation of employee benefit plans. Included within it are provisions which created elaborate reporting and disclosure requirements; detailed standards for participation and vesting rights, and funding; and imposed fiduciary obligations on those charged with administering the plans.

5. Indeed, while ERISA preempts state laws insofar as they may relate to employee benefit plans, the preemption does not exempt or relieve any person from any law of any state which regulates insurance, banking or securities. § 1144(b)(2)(A). Most employee benefit plans are excluded from the coverage of such statutes, however. § 1144(b)(2)(B). From this it can be inferred that Congress intended to leave to the states the power to regulate insurance companies and insurance contracts.

to participants in the plan. Recognizing the wisdom displayed by the Congress in the enactment of legislation, this Court cannot assume, without specific direction, that it intended the federal courts to become the battleground for all dissatisfied claimants. It has generally been the policy of federal courts to disclaim jurisdiction where its existence is really doubtful. *The Emma Giles,* 15 F.Supp. 502 (D.Md.1936). This is an appropriate case to invoke that policy.

The Court holds that under the facts of this case, the complaint fails to state a claim over which the Court has jurisdiction under 29 U.S.C. § 1132.